**NOGLE & BLACK AVIATION, INC. and Charles Judson Nogle, Appellants,**

v.

Anna Maria **FAVERETTO** as Next Friend of Alejandro Migliori and Mariana Migliori, Minors, and Americo Migliori as Administrator of the Estate of Peitro Foster Migliori, Appellees.

No. 14–08–00272–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 9, 2009.

Supplemental Opinion on Overruling of Rehearing July 30, 2009.

Kenneth R. Breitbeil, Houston, James S. Strawinski, Atlanta, GA, for appellants.

Ladd Sanger, Dallas, for appellees.

Panel consists of Justices YATES, SEYMORE, and BOYCE.

## OPINION

LESLIE B. YATES, Justice.

Appellants Nogle & Black Aviation, Inc. ("N & B") and Charles Judson Nogle appeal the trial court's orders denying their special appearances. We conclude that the trial court lacked personal jurisdiction over Nogle but properly exercised personal jurisdiction over N & B. Therefore, we affirm in part and reverse and render in part.

## BACKGROUND

Nogle, an Illinois resident, owns N & B, which is an Illinois company in the business of performing maintenance, inspections, and modifications on aircraft, primarily Beechcraft T–34 planes. N & B built the aircraft at issue in this case in 1990 and included a certain type of modified wing spars. N & B then sold the accident aircraft to a Georgia company later that year. In 1991, a T–34 with the same type of modified wing spars crashed. The Federal Aviation Administration ("FAA") grounded the altered T–34s and issued an airworthiness directive concerning T–34 wing spars, which set forth criteria for correcting the unsafe condition so that an aircraft could regain its airworthy status. In response, N & B developed an Alternative Means of Compliance ("AMOC") with the airworthiness directive. If the FAA approves an AMOC, then an aircraft can regain its airworthy status by complying with the AMOC rather than the criteria in the airworthiness directive. The FAA approved N & B's AMOC, and the accident aircraft as well as many other T–34s around the country complied with the AMOC and resumed airworthy status. The accident aircraft was later sold again to a Texas entity known as PRVNY Pluk and operated by Texas Air Aces, also a Texas entity.

In 2003, another T–34 crashed, and the FAA issued another airworthiness directive concerning T–34 wing spars and grounded affected aircraft. N & B developed a second AMOC to address these concerns, which the FAA approved, and the accident aircraft and other T–34s around the country complied with this procedure and resumed airworthy status. Several months after the accident aircraft resumed airworthy status, Peitro Montgomery Migliori was flying it as a student pilot when a wing broke off during flight, causing a crash that killed him and the instructor pilot. Mr. Migliori was a Venezuelan citizen, and the crash occurred in Texas.

Appellees Anna Maria Faveretto as Next Friend of Alejandro Migliori and Mariana Migliori, Minors, and Americo Migliori as Administrator of the Estate of Peitro Foster Migliori (collectively "the Miglioris") sued Nogle and N & B, among others, in Texas. Nogle and N & B filed special appearances, which the trial court denied. They now appeal.

## ANALYSIS

### A. Legal Standard

 Whether a trial court has personal jurisdiction over a defendant is a question of law. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex. 2002); *Schott Glas v. Adame,* 178 S.W.3d 307, 312 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). When the facts underlying the jurisdictional issue are undisput-

ed, we review the trial court's determination de novo. *Schott Glas*, 178 S.W.3d at 312; *see American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002). However, when the relevant facts are disputed, a party may challenge the trial court's underlying conclusions for legal and factual sufficiency. *Schott Glas*, 178 S.W.3d at 312. If the trial court does not issue findings of fact, we presume the trial court resolved all factual disputes in favor of its judgment. *Id.* The plaintiff bears the initial burden of pleading facts sufficient to establish personal jurisdiction. *Marchand*, 83 S.W.3d at 793; *Schott Glas*, 178 S.W.3d at 313. The burden then shifts to the defendant challenging personal jurisdiction to negate all bases of jurisdiction alleged by the plaintiff. *Marchand*, 83 S.W.3d at 793; *Schott Glas*, 178 S.W.3d at 313.

The Texas long-arm statute governs Texas courts' exercise of personal jurisdiction over a nonresident defendant. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–.045 (Vernon 2008); *Schott Glas*, 178 S.W.3d at 312. The long-arm statute reaches as far as federal constitutional due process will allow, and thus the long-arm statute is satisfied if an assertion of personal jurisdiction comports with due process. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007); *Schott Glas*, 178 S.W.3d at 312. Personal jurisdiction is proper when the nonresident defendant has established "minimum contacts" with the forum and the exercise of jurisdiction comports with " 'traditional notions of fair play and substantial justice.' " *Moki Mac*, 221 S.W.3d at 575 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

When analyzing personal jurisdiction, the touchstone of the minimum contacts analysis is purposeful availment—the defendant's contacts must show that it purposefully availed itself of the privileges and protections of the forum's law to subject itself to jurisdiction there. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784–85 (Tex.2005); *see also Brocail v. Anderson*, 132 S.W.3d 552, 557 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (noting that "[t]he purposeful availment requirement is a threshold"). Any contacts that do not amount to purposeful availment are irrelevant in the jurisdictional analysis. *See Olympia Capital Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 406 (Tex.App.-Dallas 2008, no pet.). What is important is the quality and nature of the defendant's contacts with the forum rather than the number of contacts. *American Type Culture*, 83 S.W.3d at 806.

A defendant's contacts can give rise to either general or specific jurisdiction. General jurisdiction is based on continuous and systematic contacts with the forum. *Moki Mac*, 221 S.W.3d at 575. Specific jurisdiction is based on purposeful contacts that give rise or relate to the litigation. *Id.* at 576. The Miglioris allege the trial court has specific jurisdiction over both Nogle and N & B and also general jurisdiction over N & B.

## B. Jurisdiction Over Nogle

In two issues, Nogle alleges the trial court improperly exercised personal jurisdiction over him individually. Nogle holds a certification from the FAA that gives him authority to sign off on major repairs or alterations on aircraft. Such a sign off is necessary for a grounded aircraft to regain airworthy status. At the request of PRVNY Pluk and Texas Air Aces, Nogle provided technical assistance over the telephone to the mechanics working to make the accident aircraft compliant with the second AMOC. Nogle then signed off on the modification and mailed the

certificate to Texas. The Miglioris claim these actions by Nogle individually are sufficient to establish personal jurisdiction over him because Nogle knew the accident aircraft was owned and operated in Texas, he mailed the certificate to Texas, and without this certification, which the Miglioris claim relates to the portion of the aircraft that failed in the crash, the accident aircraft would not have been in the air. We disagree.

■ In analyzing specific jurisdiction, we first determine whether Nogle made minimum contacts with Texas by purposefully availing himself of the privilege of conducting activities here. See Moki Mac, 221 S.W.3d at 576. Purposeful availment focuses on the defendant's actions, not on the actions of third parties. Michiana Easy Livin', 168 S.W.3d at 787; Olympia Capital Assocs., 247 S.W.3d at 416–17. Nogle did not advertise or otherwise target his services to Texas specifically. See Olympia Capital Assocs., 247 S.W.3d at 416; cf. Moki Mac, 221 S.W.3d at 578–79. His technical support services to assist in implementing the second AMOC and his services in signing off on repairs to comply with this AMOC were available to all T–34 owners across the country. It was PRVNY Pluk and Texas Air Aces's request, not Nogle's initiative, that led to Nogle providing his services regarding the accident aircraft, and such contacts are insufficient to show purposeful availment. See Olympia Capital Assocs., 247 S.W.3d at 416–17 (providing bid to potential client at client's sole request is not purposeful availment); Weldon–Francke v. Fisher, 237 S.W.3d 789, 797 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (answering questions and responding to requests is not purposeful availment). This case is similar to Michiana Easy Livin', in which the Texas Supreme Court held that a single sale to Texas that was initiated completely

by the buyer, when the seller did nothing to target Texas specifically, did not establish purposeful availment of the laws and benefits of Texas. See Michiana Easy Livin', 168 S.W.3d at 787.

Even though Nogle had a role in the chain of events that put this Texas accident aircraft in the air before crashing in Texas, that is not enough to establish purposeful availment. See Michel v. Rocket Eng'g Corp., 45 S.W.3d 658, 671 (Tex.App.-Fort Worth 2001, no pet.) (noting that a "generalized 'but for' relationship between the forum and a non-resident defendant falls far short of meeting the requirement for specific jurisdiction that the plaintiff's cause of action must 'relate to' or 'arise out of' the non-resident's activities within the forum"). We sustain Nogle's third issue. Because we determine that Nogle did not purposefully avail himself of the benefits of conducting activities in Texas, we need not consider his fourth issue, in which he argues that the exercise of personal jurisdiction over him would offend due process.

## C. Jurisdiction Over N & B

In two issues, N & B contends the trial court erred in concluding it had personal jurisdiction over it, either based on specific or general jurisdiction, and that exercising jurisdiction would violate traditional notions of fair play and substantial justice.

### 1. Minimum Contacts

■ Although the Miglioris base their specific jurisdiction theory on many different contacts, we find specific jurisdiction is proper based on N & B's interactions with Victor Juarez. Juarez, a Texas resident, is an engineer. He was paid to perform engineering work regarding the design of an inspection procedure on the T–34 wing spar. N & B used Juarez's work, which was performed in Texas, in submitting its AMOC to the FAA for approval. The FAA approved the AMOC, which N & B

then sold for profit to many T–34 owners. In their petition, the Miglioris allege, among other things, that N & B was negligent in its "design, installation, and inspection of the wing spar."

We first consider whether N & B's contacts with Juarez amount to purposeful availment. Purposeful availment analysis considers not only the conduct of the defendant, as opposed to the plaintiff or a third party, but also whether those contacts were random or fortuitous and whether the defendant benefitted from those contacts. *See Moki Mac,* 221 S.W.3d at 575. We conclude that N & B's relationship with Juarez amounted to purposeful availment. A contract with a Texas resident alone does not show a purposeful contact with Texas. *See Ashdon, Inc. v. Gary Brown & Assocs.,* 260 S.W.3d 101, 113 (Tex.App.-Houston [1st Dist.] 2008, no pet.); *Olympia Capital Assocs.,* 247 S.W.3d at 417. Other factors about the nature of the relationship are much more important, such as the place of performance. *See Barnstone v. Congregation Am Echad,* 574 F.2d 286, 288–89 (5th Cir.1978) (noting that "it is the place of performance rather than execution, consummation or delivery which should govern the determination of jurisdiction" and holding that plaintiff's "unilateral partial performance" in Texas was insufficient to establish jurisdiction); *Ashdon,* 260 S.W.3d at 113 ("Generally, a contract calling for performance outside of Texas does not subject a party to jurisdiction here."). Juarez performed his engineering work in Texas. *See Fleischer v. Coffey,* 270 S.W.3d 334, 338 (Tex.App.-Dallas 2008, no pet.) (finding jurisdiction proper based in part on contract

being performed in Texas); *cf. American Type Culture,* 83 S.W.3d at 807–08 (no jurisdiction, contract performed out of state); *Olympia Capital Assocs.,* 247 S.W.3d at 417–18 (same).

Furthermore, unlike Nogle's technical assistance, this relationship was not unilaterally initiated by the Texas resident. *Cf. Michiana Easy Livin',* 168 S.W.3d at 787. N & B specifically chose Juarez among other possible candidates because it liked his work the best. The doctrine of purposeful availment recognizes that a defendant can make choices to avoid benefitting from activities in Texas. *See Moki Mac,* 221 S.W.3d at 575; *Michiana Easy Livin',* 168 S.W.3d at 785. Even though N & B may have made some such choices, such as not locating any employees or offices in Texas and not targeting the Texas market, it specifically chose to use the work of this Texas resident. That work was performed in Texas, N & B used it in completing its AMOC, and N & B made money doing so when it sold the AMOC to T–34 owners. It is not unreasonable to expect that the choice to use a Texas engineer doing work in Texas to assist with the design of a wing spar modification could lead to litigation in Texas for a claim relating to a wing spar failure. *See GJP, Inc. v. Ghosh,* 251 S.W.3d 854, 880–81 (Tex. App.-Austin 2008, no pet.) (noting nonresident defendants controlled whether transaction occurred in Texas and that "it is not unreasonable or unexpected that they might be hailed into court here in regard to claims arising from that activity"). For these reasons, we conclude N & B's use of Juarez's services amounts to purposeful contact with Texas.[1]

---

1. Even though it cites personal jurisdiction case law regarding the effects of contracts with Texas residents, N & B also asserts in its brief that there is no evidence of an actual contract with Juarez. Nogle's deposition testimony shows that Juarez was paid for performing engineering work, which N & B used in developing the AMOC and submitting it to the FAA. Thus, even if N & B did not have a contract with Juarez, it had a substantial rela-

Having concluded that N & B's use of Juarez's services amounted to purposeful contact, we now consider whether the litigation arises from or relates to that contact. *See Moki Mac*, 221 S.W.3d at 576. In making this determination, we focus on relationship among the defendant, Texas, and the litigation. *Id.* at 575–76. To support an exercise of specific jurisdiction, there must be a substantial connection between a nonresident defendant's forum contacts and the operative facts of the litigation. *Id.* at 585. The issue of whether negligence in the design and inspection of the wing spar modification in the AMOC caused the wing separation on the accident aircraft is an operative fact in this litigation, and Juarez's engineering work is directly related to that. *See Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 341 (Tex.2009) (finding personal jurisdiction and stating, in litigation over unpaid royalties, that the Texas real property itself "will also be an operative fact, or at the very least, will have a substantial connection to the operative facts").

N & B asserts that Juarez's work is irrelevant because there is no evidence to show N & B actually worked on the part of the accident aircraft that failed. Nogle states in an affidavit that the AMOC-related modifications to the accident aircraft were applicable only to the wing spars and that the wing's center section, rather than its spars, failed on the accident aircraft. In their petition, the Miglioris allege negligence against N & B in causing the crash, based in part on its alleged negligent design, installation, and inspection of the wing spars.[2] Whether N & B actually was negligent regarding the wing spars and whether a problem with the wing spars actually caused the crash are merits-based questions that should not be resolved in a special appearance. *See Pulmosan Safety Equip. Corp. v. Lamb*, 273 S.W.3d 829, 839 (Tex.App.-Houston [14th Dist.] 2008, pet. filed); *Kelly v. Gen. Interior Constr., Inc.*, 262 S.W.3d 79, 86 (Tex.App.-Houston [14th Dist.] 2008, pet. filed); *see also Moki Mac*, 221 S.W.3d at 582 (declining to adopt jurisdiction rule that "would require a court to delve into the merits to determine whether a jurisdictional fact is actually a legal cause of the injury"); *Michiana Easy Livin'*, 168 S.W.3d at 790 (rejecting jurisdiction theory that would "confuse[ ] the roles of judge and jury by equating the jurisdictional inquiry with the underlying merits"). We take the allegations in the petition as true at the special appearance stage. *Pulmosan Safety*, 273 S.W.3d at 839; *Flanagan v. Royal Body Care, Inc.*, 232 S.W.3d 369, 377 (Tex.App.-Dallas 2007, pet. denied). For jurisdictional purposes, Nogle's affidavit at most creates a fact issue regarding the allegations in the petition, and that is sufficient to support the trial court's determination that it had jurisdiction over N & B based on the connection between the AMOC and the accident. *See Pulmosan Safety*, 273 S.W.3d at 839; *Kelly*, 262

tionship where it knowingly used his work, which was performed in Texas, to develop its AMOC.

**2.** The causation evidence in the court's record is thin. We have not been presented with even the crash report, much less expert testimony. We have only the allegations in the petition and Nogle's affidavit. At oral argument, the Miglioris complained that they were limited to jurisdictional discovery and thus could not conduct discovery on causation.

By focusing on the operative facts of the litigation, *Moki Mac* would seem to suggest that some level of discovery regarding causation could be jurisdictional discovery when the contacts the plaintiff alleges supports jurisdiction relate to causation. However, we need not resolve this issue because the Miglioris raised no appellate issue regarding any improper limitations on discovery. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993).

S.W.3d at 86; *Flanagan,* 232 S.W.3d at 377.

Because we conclude that N & B had purposeful contacts with Texas through its relationship with Juarez and those contacts are substantially connected to the operative facts of the litigation, we conclude the trial court properly determined that it had specific jurisdiction over N & B. Thus, we overrule N & B's first issue.

### 2. Fair Play and Substantial Justice

 N & B argues that even if it had sufficient purposeful contacts to establish specific jurisdiction, the trial court erred in exercising jurisdiction because doing so violates traditional notions of fair play and substantial justice. In making this determination, we consider (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interests of the several states in furthering fundamental substantive social policies. *Retamco Operating,* 278 S.W.3d at 341–42. Only in rare cases will the exercise of personal jurisdiction fail to comport with fair play and substantial justice. *Id.*

N & B argues that forcing it to defend litigation in Texas would be unduly burdensome because it is an Illinois resident without employees or offices in Texas. N & B asserts that Texas has only a minimal interest in the litigation because the Miglioris are from Venezuela rather than Texas and the crash could have happened anywhere. Finally, N & B contends the Miglioris can obtain relief against N & B in Illinois, where all of N & B's employees and witnesses are located. After considering the relevant factors, we easily determine that the exercise of jurisdiction here is consistent with due process. N & B will certainly incur more expense to defend litigation in Texas as opposed to its home state, but that would be true for virtually any nonresident defendant. *See id.* Distance to travel is usually not a significant consideration with the ease of modern transportation. *Glencoe Capital Partners II, L.P. v. Gernsbacher,* 269 S.W.3d 157, 168 (Tex.App.-Fort Worth 2008, no pet.). That is particularly true in this case as N & B has several aircraft at its disposal. Texas does have an interest in the litigation because the owner and operator of the accident aircraft are Texas entities, the crash was in Texas, a Texas resident helped design part of the accident aircraft that is alleged to have failed, the instructor pilot who died was a Texas resident, and Migliori's estate administration is pending in Texas. *See Kelly,* 262 S.W.3d at 87; *Flanagan,* 232 S.W.3d at 378. The crash litigation involves multiple defendants, and forcing the Miglioris to litigate the plane crash both in Texas and in Illinois is costly and inconvenient for them as well as the witnesses and parties in Texas and is a waste of judicial resources. *See Kelly,* 262 S.W.3d at 87; *Control Solutions, Inc. v. Gharda Chems. Ltd.,* 245 S.W.3d 550, 562 (Tex.App.-Houston [1st Dist.] 2007, no pet.).

This is not one of the rare cases when exercising personal jurisdiction would violate traditional notions of fair play and substantial justice. We overrule N & B's second issue.

### CONCLUSION

We hold that the trial court properly exercised personal jurisdiction over N & B but that it erred in exercising personal jurisdiction over Nogle. Accordingly, we affirm the trial court's judgment as to N & B and reverse the trial court's judgment as to Nogle and render judgment that the

Miglioris' claims against Nogle be dismissed for lack of personal jurisdiction.

## SUPPLEMENTAL OPINION
## ON REHEARING

N & B has moved for rehearing on several grounds. We overrule its motion, and we issue this supplemental opinion to address one issue raised in the motion.

■ Based on a new deposition page not included in the appellate record and another deposition page in the record but never cited in any of its pre-opinion briefing, N & B argues that our conclusion that jurisdiction is proper based on its relationship with Juarez is mistaken. We disagree. First, we may not consider evidence that is only attached to briefs.[1] See Tex.R.App. P. 34.1; City of Farmers Branch v. Ramos, 235 S.W.3d 462, 467 (Tex.App.-Dallas 2007, no pet.). Second, the remaining evidence does not establish that the trial court's decision was erroneous. When, as here, the trial court does not issue findings of fact, we presume the trial court resolved all fact issues in favor of its judgment, and we will uphold those findings if supported by sufficient evidence. See Luxury Travel Source v. Am. Airlines, Inc., 276 S.W.3d 154, 161 (Tex. App.-Fort Worth 2008, no pet.); Schott Glas v. Adame, 178 S.W.3d 307, 312 (Tex. App.-Houston [14th Dist.] 2005, pet. denied). We imply that the trial court found that even if N & B did not, as N & B argues, have a contract with Juarez, it had a substantial enough relationship to justify the exercise of personal jurisdiction. We will construe N & B's argument as a challenge to the sufficiency of the evidence supporting this implied finding.

N & B argues that a separate entity, the T–34 Spar Corporation, alone hired Jua-

rez, that the data Juarez provided to N & B was only through this corporation, and that N & B had no input in or control over the scope of the work Juarez performed. However, the deposition testimony N & B cites does not clearly establish this theory. N & B's deposition evidence states that Juarez provided data to N & B through the T–34 Spar Corporation and that the T–34 Spar Corporation offered N & B a certain inspection procedure that the FAA would not accept unless it was renumbered. This evidence does not negate the other relevant evidence, which shows that (1) N & B paid Juarez for his work, (2) Juarez's work was performed in Texas, (3) N & B specifically chose to use Juarez's work because it liked Juarez's inspection procedure the best, (4) the work played an important part in securing FAA approval of the AMOC, and (5) N & B profited from the use of Juarez's work. At most, N & B's evidence raises a fact issue about the nature and extent of its relationship with Juarez, which does not render the remaining evidence insufficient to support the trial court's implied finding of a substantial relationship between N & B and Juarez. See Zac Smith & Co. v. Otis Elevator Co., 734 S.W.2d 662, 666 (Tex.1987); Milacron Inc. v. Performance Rail Tie, L.P., 262 S.W.3d 872, 875 (Tex.App.-Texarkana 2008, no pet.). For these additional reasons, we hold the trial court properly exercised personal jurisdiction over N & B.

---

1. It is also for this reason that we grant N & B's motion to strike the new affidavits the Miglioris attached to their brief on rehearing, which relate to a causation argument we do not discuss further in this supplemental opinion.