Opinion issued December
1, 2011.



In The

Court of Appeals

For The

First District of Texas

————————————

NO. 01-11-00380-CV

———————————

MORRIS
INDUSTRiES, INC.,
Appellant

 

V.

 

TRIDENT
STEEL CORPORATION,
Appellee



 



 

On Appeal from the 215th
Judicial District Court

Harris County, Texas



Trial Court Case No. 2009-57578

 



 

MEMORANDUM OPINION

In this interlocutory appeal, Morris
Industries, Inc., appeals the trial court’s order denying its special
appearance.[1]  Trident Steel
Corporation sued Morris, a New Jersey corporation, alleging claims for breach
of contract and breach of warranty.  Morris
filed a special appearance subject to its answer, which the trial court
denied.  Morris appeals, contending that
it lacks the minimum contacts with Texas required for a Texas court to exercise
jurisdiction over it.  Finding no error,
we affirm the trial court’s order.

Background

Morris is a New Jersey corporation
headquartered in New Jersey. Morris makes and distributes pipes, casings, and
other items used in the oil and gas industry. 
In February 2008, Trident, a Missouri corporation with offices in Texas,
began ordering oilfield couplings from Morris for delivery to its Houston
location. 

Pursuant to its contract with Trident,
Morris shipped couplings to the Port of Houston. Upon their arrival, Morris
paid and arranged for the couplings to be offloaded from the ships and trucked
to threading facilities designated by Trident. 
Morris retained title to the couplings and bore the risk of their loss
until this point; possession and title to the couplings transferred to Trident
at the threading facilities.  In November
2008, Trident became dissatisfied with Morris’s couplings, asserting that they had
failed testing performed by Trident and Trident’s customers.  Trident began rejecting Morris’s
deliveries.  

In September 2009, Trident sued
Morris in Harris County, alleging claims for breach of contract and breach of
warranty.  Morris specially appeared,
asserting that it was not subject to personal jurisdiction in Texas. Trident
moved for a continuance before the special appearance hearing.  The trial court, without ruling on Trident’s
motion for continuance, denied Morris’s special appearance.  Morris then appealed the trial court’s ruling
to this Court.  On appeal, we held that
Morris had negated Trident’s jurisdictional allegations, but remanded the case
to the trial court to consider Trident’s request for jurisdictional discovery,
pending at the time the trial court denied Morris’s motion. Morris Indus., Inc. v. Trident Steel Corp., No. 01-09-01094-CV,
2010 WL 4484351, at *5 (Tex. App.—Houston [1st Dist.] Nov. 10, 2010, no pet.)
(mem. op).  On remand, Trident adduced
additional jurisdictional facts relevant to Morris’s contacts with Texas.   

Morris maintains offices in New
Jersey, New York, Pennsylvania, and Connecticut.  Morris has no offices in Texas, no employees
in Texas and no agent in Texas for service of process.  Morris sells its products via a toll-free number
listed on its website and through Iron Angeles of Colorado, Inc., an
independent distributor located in Colorado. 




 

Peter Brebach, a sales agent for
Iron Angeles, brokers sales between Morris and its customers.  Brebach conducts research on behalf of Morris, locates
Texas buyers interested in purchasing steel couplings, and communicates the results
of his research to Morris.  For the
contracts at issue in this case, Brebach negotiated purchase orders with Trident
on behalf of Morris; Morris paid Brebach a commission for these sales pursuant
to a “formal agreement.”  Brebach routinely
copied corporate representatives from Morris and Trident on his
correspondence.  In some instances,
Morris directly communicated to Trident its progress in performing the orders.

Morris purchased couplings from a Chinese
foundry and shipped them from China F.O.B. the Port of Houston.  Once the couplings arrived, Morris hired a local
trucking company to pick up each order from a shipyard facility and transport
the couplings to Trident’s designated “threading” facilities.  Craig Laine, a purchasing agent for Morris,
travelled to Houston during the product delivery process to familiarize himself
with the threading facilities and to determine how to transport Morris’s couplings
to those facilities.  It was Laine who
arranged for trucks to deliver Morris’s products from the Port of Houston to the
Houston threading facilities.  Morris
owned the couplings until their delivery to the threading facilities; Morris
therefore bore the risk of loss from the time it shipped the couplings until it
transferred possession to Trident at the threading facilities.  After delivering each order, Morris prepared
and sent Trident an invoice for expenses. 


After Trident notified Morris of
the alleged defects, Morris attempted to cure its imperfect tender.  Morris leased a storage facility in Houston
so that Laine and Mike Stern, Morris’s Vice President, could inspect the couplings.  Laine travelled to Houston approximately six
times on business related to the contracts between Morris and Trident.  While in Houston, he personally segregated the
couplings by heat number.  Once Laine
segregated the couplings, he arranged for two Houston companies to test them
for defects.  One company tested the
couplings on behalf of both Trident and Morris, but the other tested the
couplings solely at Morris’s direction.  Despite
Morris’s efforts to cure, Trident rejected the couplings and filed this suit.  

Apart from Morris’s contracts with
Trident, Morris has filled sixty‑two purchase orders from Texas residents,
shipping goods to fifteen different customers in Texas.  Some orders indicate Morris delivered its
products by common carrier, while others reveal Morris arranged for trucks to
deliver goods within Texas.  




Standard
of Review

We review de novo a trial court’s
exercise of personal jurisdiction as a question of law, but the resolution of
underlying factual disputes may precede that conclusion.  Am. Type Culture Collection, Inc. v. Coleman,
83 S.W.3d 801, 805–06 (Tex. 2002); BMC Software Belg., N.V. v. Marchand, 83
S.W.3d 789, 794 (Tex. 2002).  When
the trial court issues findings of fact, we review them for legal and factual
sufficiency.  BMC Software Belg., N.V., 83 S.W.3d at 795.  When, as here, the trial court does not issue
fact findings, “we presume that the trial court resolved all factual disputes
in favor of its ruling.” Glatty v. CMS Viron Corp., 177 S.W.3d 438, 445
(Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing Am. Type Culture
Collection, 83 S.W.3d at 805–06); Moki
Mac River Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007).  

Discussion

          Texas courts
may exercise personal jurisdiction over a non-resident defendant if the requirements
of the Due Process Clause of the United States Constitution[2] and the Texas
long-arm statute[3] are both satisfied. Helicopteros Nacionales de
Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872 (1984); Am.
Type Culture Collection, 83 S.W.3d at 806.  The long-arm statute provides that Texas may
assert personal jurisdiction over non-resident defendants who conduct business
in the state.  It provides in relevant
part, “In addition to other acts that may constitute doing business, a nonresident
does business in this state if the nonresident contracts by mail or otherwise
with a Texas resident and either party is to perform the contract in whole or
in part in this state.” Tex. Civ. Prac. & Rem. Code Ann. § 17.042.  “Because the Texas long-arm statute reaches
‘as far as the federal constitutional requirements of due process will allow,’
the statute is satisfied if the exercise of personal jurisdiction comports with
federal due process.”  Preussag Aktiengesellschaft v. Coleman, 16 S.W.3d 110, 113 (Tex. App.—Houston [1st Dist.] 2000, pet. dism’d
w.o.j.) (quoting CSR, Ltd. v. Link, 925 S.W.2d 591, 594 (Tex.
1996)).  We thus examine whether a Texas
court’s exercise of jurisdiction over Morris comports with the requirements of
federal due process.  See id. 

          To comply
with federal due process requirements, “the nonresident defendant must have
purposefully established such minimum contacts with the forum state that it
could reasonably anticipate being sued there.” Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462,
475, 105 S. Ct. 2174, 2183 (1985)). 
“If the nonresident defendant has purposefully availed itself of the privileges
and benefits of conducting business in a state, it has sufficient contacts to
confer personal jurisdiction.” Id.
(citing Burger King, 471 U.S. at 475, 105 S. Ct. at 2183).  The defendant’s activities must justify the
conclusion that the defendant could anticipate being sued in a Texas court.  Am. Type Culture Collection, 83 S.W.3d
at 806.  A defendant is not subject to
jurisdiction in Texas if its contacts with the state are “random, fortuitous,
or attenuated.”  Id.  “Nor can a defendant be haled into a Texas
court for the unilateral acts of a third party.” Id.  

We apply three principles to determine
whether a non-resident defendant has purposefully availed himself of the privileges
and benefits of conducting business in Texas. 
See Michiana Easy Livin’ Country, Inc. v. Holten, 168 S.W.3d 777,
785 (Tex. 2005).  First, only the
defendant’s actions may constitute purposeful availment; a defendant may not be
haled into a jurisdiction based on the unilateral activities of a third
party.  Id. (citing Burger King,
471 U.S. at 475, 105 S. Ct. at 2174). 
Second, the defendant’s acts must be purposeful; a showing of random,
isolated, or fortuitous contacts is insufficient.  Id. (citing Burger King, 471
U.S. at 475, 105 S. Ct. at 2183, and Keeton v. Hustler Magazine, Inc.,
465 U.S. 770, 774, 104 S. Ct. 1473, 1479 (1984)).  Third, a defendant must seek some benefit,
advantage, or profit through his purposeful availment, because jurisdiction is
based on notions of implied consent; that is, by seeking the benefits and
protections of a forum’s laws, a non-resident consents to suit there.  Id. (citing World-Wide Volkswagen
Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567 (1980)).  The purposeful availment test focuses on “the
defendant’s efforts to avail itself of the forum” and not “the form of the
action chosen by the plaintiff.”  Moki
Mac, 221 S.W.3d at 576.  Due process
also requires that the exercise of personal
jurisdiction over a nonresident defendant “comport with fair play and
substantial justice.”  Preussag
Aktiengesellschaft, 16 S.W.3d at 114.  

          Minimum-contacts
analysis is further divided into general jurisdiction and specific
jurisdiction.  Preussag
Aktiengesellschaft, 16 S.W.3d at 114. 
Personal jurisdiction exists if the nonresident defendant’s minimum
contacts give rise to either general or specific jurisdiction. Helicopteros Nacionales de Colombia, 466
U.S. at 413–14, 104 S. Ct. at 1872.  In
determining whether a nonresident defendant purposefully established minimum
contacts with Texas, a court should consider the “quality and nature of the
defendant’s contacts, rather than their number.” Am. Type Culture Collection,
83 S.W.3d at 806.  

Morris
contends that the trial court does not have
general jurisdiction over it because Morris does not have systematic and
continuous contacts with Texas.  Morris
also contends that the trial court does not have specific jurisdiction because it
conducted no activity in Texas.  For reasons
set forth below, we conclude that Morris’s contacts with Texas demonstrate
Morris purposefully availed itself of the privilege of conducting activities in
Texas and that Trident’s suit against Morris arises out of those contacts.  We thus do not examine whether Morris’s
contacts give rise to general jurisdiction.  

Specific Jurisdiction

          A court may exercise specific personal
jurisdiction over a non‑resident defendant if: (1) the non-resident
purposely directed its activities toward the forum state or purposely availed
itself of the privileges of conducting activities there, and (2) the
controversy arises out of or is related to the non-resident’s contacts with the
forum state.  Freudensprung v.
Offshore Tech. Servs., Inc., 379 F.3d 327, 343 (5th Cir. 2004); see Moki
Mac, 221 S.W.3d at 576.  The
non-resident defendant’s purposeful conduct, not the plaintiff’s unilateral
acts, must have caused the contact.  See
Helicopteros Nacionales de Colombia, 466 U.S. at 414, 104 S. Ct. at 1872; see also Michiana, 168 S.W.3d at
788.  

1)   
Purposeful availment

Morris
contends that its contacts with the forum state do not confer specific
jurisdiction, because Trident initiated them.  Morris argues that its few contacts with Texas—inspecting and testing the couplings—occurred after Trident complained of
defects.  We disagree. 

Peter
Brebach of Iron Angeles serves as a sales agent for various steel suppliers,
including Morris.  Brebach solicited
Trident’s business in Texas on behalf of Morris.  Trident asks this Court to impute Brebach’s
contacts to Morris. 

Texas contacts of an agent are
attributable to the principal.  See Walker Ins. Servs. v. Bottle Rock Power
Corp., 108 S.W.3d 538, 549 (Tex. App.—Houston [14th Dist.] 2003, no pet.); see also Schott Glas v. Adame, 178 S.W.3d 307, 315 (Tex. App.—Houston
[14th Dist.] 2005, pet. denied), abrogated
on other grounds by PHC-Minden, L.P. v. Kimberly‑Clark Corp., 235
S.W.3d 163, 169 (Tex. 2007).  An “agent”
is one who is authorized by a person or entity to transact business on behalf
of the person or entity.  Bottle Rock Power Corp., 108 S.W.3d at
549.  The defining feature of an agency
relationship is the principal’s control over the agent.  Id.  Whether an agency relationship exists is a
question of fact.  Schott Glas, 178 S.W.3d at 315.
The trial court did not expressly conclude that Brebach acted as Morris’s
agent, but we presume that the trial court impliedly found all facts necessary
to support its judgment.  Glatty, 177 S.W.3d at 445. 

The trial court reasonably could have
concluded that Brebach acted as Morris’s agent in these transactions.  Morris exercised control over Brebach and
paid him a commission for the sales pursuant to a “formal agreement” between
Morris and Brebach.  Laine testified that
Brebach conducted research on behalf of Morris, communicated
the results of his research to Morris, and entered into contracts with Texas
clients on behalf of Morris.  In an
affidavit in the trial court, the President of Trident averred that when
Brebach first approached Trident, Brebach represented that Morris retained him
to develop business in the Gulf Coast.  Thus,
some evidence shows that Morris worked directly with Brebach, dictating the
means and details of where to target business on Morris’s behalf.  

In these particular transactions, Brebach
located Trident as a customer for Morris’s couplings.  Brebach negotiated and executed the sales
agreements with Trident; Brebach had actual authority to enter into and
negotiate these contracts on behalf of Morris. 
After Brebach solicited Trident’s business, Morris paid Brebach a
commission for his sales.  Based
on this evidence, the
trial court could have found that Morris exercised a degree of control over
Brebach sufficient to make Brebach Morris’s sales agent in these transactions. Cf. Schott Glass, 178 S.W.3d at 315–16
(concluding no agency relationship existed between parent company and Texas
distributor to impute contacts for general jurisdiction where agent alone
decided how to conduct sales).  These marketing
contacts reveal that Morris purposefully availed itself of Texas by soliciting
coupling sales from Trident.  “A nonresident
defendant that directs marketing efforts to Texas in the hope of soliciting
sales is subject to suit here for alleged liability arising from or relating to
that business.”  Moki Mac, 221 S.W.3d at 576; accord
IRA Res. v. Griego, 221 S.W.3d 592,
597 (Tex. 2007) (“[T]argeting marketing efforts in a state to generate business
there suffices to justify jurisdiction in disputes arising from that
business.”).  

Morris also purposefully availed
itself of Texas by performing parts of the underlying contracts in Texas.  Morris delivered couplings to the Port of
Houston.  Morris then paid
and arranged for the couplings to be offloaded and trucked to Houston threading
facilities.  Morris sent its corporate representative to
Houston to investigate the threading facilities and directly arrange for
transportation to those facilities.  The
companies Morris hired to deliver the couplings all operated within Texas.  Morris maintained title and possession
throughout the delivery process, transferring ownership to the couplings in
Texas.  Morris therefore bore the risk of
loss for the transactions until it delivered the couplings to Trident at the
threading facilities.  We conclude that these
contacts demonstrate Morris partially performed its contracts with Trident in
Texas and purposefully availed itself of the privileges of conducting business
here.  See Max Protetch, Inc.
v. Herrin, 340 S.W.3d 878, 886–88 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (finding
delivery to Houston, regular communication, and visit to Houston to
inspect product conferred specific jurisdiction); Nogle & Black Aviation, Inc. v. Faveretto, 290 S.W.3d 277,
283 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (finding specific
jurisdiction in a negligence action based on plane defect where defendant chose
to hire Texas resident to perform engineering work on plane); Fleischer v. Coffey, 270 S.W.3d 334, 338
(Tex. App.—Dallas 2007, no pet.) (finding specific jurisdiction where buyer of German
Shepherd knew dog was trained in Texas, travelled twice to Texas to oversee
training, and picked up dog in Texas).

Morris
argues that the trial court erred in concluding that it had jurisdiction,
relying mainly on Michiana. 168 S.W.3d
at 787–88 (finding single product sale stemming from single phone call
initiated by Texas buyer to non-resident defendant was not purposeful contact
where buyer alone decided where to deliver RV and paid for shipping, and risk
of loss for RV passed outside forum state). 
But, unlike the RV seller in Michiana, Morris
did not only send products to Texas at its customer’s direction, but also
solicited Trident’s business and performed its contracts in Texas by hiring
local companies to transport couplings within Texas.  During their Texas transit, Morris maintained
ownership of the goods and bore the risk of their loss.  Because
Morris directed Brebach to locate Texas customers on its behalf and hired local
transportation companies to perform its contractual obligations, we
conclude that Morris purposefully availed itself of Texas to form and perform
its contracts with Trident.[1]

2)   
Contacts “arising out of” this
dispute

Even if a
non-resident has purposefully availed himself of the benefits of conducting
business in Texas, Texas courts do not have specific jurisdiction over the
non-resident unless the cause of action “arises from or is related to an
activity conducted within the forum.”  BMC
Software Belg., N.V., 83 S.W.3d at 796. 
We focus our analysis on the relationship amongst the non-resident, the
forum, and the litigation to determine if the alleged liability arises from or
is related to an activity conducted in Texas. 
Counter Intelligence, Inc. v. Calypso Waterjet Sys., Inc., 216
S.W.3d 512, 518 (Tex. App.—Dallas 2007, pet. denied).  That is, the non-resident’s conduct must have
either purposely been directed towards or occurred in the forum and must have a
“substantial connection” with the litigation’s operative facts.  Moki Mac, 221 S.W.3d at 584–85;
Glattly, 177 S.W.3d at 447.

We conclude that Trident’s claims
against Morris arose out of Morris’s business contacts with Texas.  Trident’s breach of contract and breach of
warranty claims all arise out of Morris’s delivery of non‑conforming
goods to Trident in Houston.  Morris
delivered the couplings to Houston at its own expense and attempted to fix the
couplings here after Trident claimed imperfect tender.  Accordingly, we hold that there is a
substantial connection between Morris’s business contacts with Texas and the
operative facts of the litigation. 

Fair Play and Substantial Justice

          Having
found that Morris purposefully established minimum contacts with Texas, we must
consider whether the exercise of personal jurisdiction over Morris comports
with traditional notions of fair play and substantial justice.  See
Glatty, 177 S.W.3d at 447 (citing Burger
King, 471 U.S. at 475‑76, 105 S. Ct at 2183–84).  Where appropriate, we consider: (1) the
burden on the defendant; (2) the interests of the forum state in adjudicating
the dispute; (3) the plaintiff’s interest in obtaining relief; (4) the interstate
judicial system’s interest in obtaining efficient resolution of controversies;
and (5) the shared interest of the several states in furthering fundamental,
substantive social policies.  Guardian Royal Exch. Assurance Ltd. v.
English China Clays, P.L.C., 815 S.W.2d 223, 231 (Tex. 1991).  Considering these factors, we hold that
exercising personal jurisdiction over Morris comports with traditional notions
of fair play and substantial justice. 
Morris sent products and corporate representatives to Texas in
connection with the transactions that are the subject of this suit, supporting
a finding that defending itself in Texas would not be unduly burdensome.  Texas has a particular interest in resolving
this dispute: its subject, defective oilfield couplings are located in Texas and were
intended for use here.  Texas has “a
substantial interest in protecting its citizens against [the] harm from breach
of contract.”  Cappucitti v. Gulf Indus. Prods., Inc, 222 S.W.3d 468, 487 (Tex.
App.—Houston [1st Dist.] 2007, no pet.).  Accordingly, we hold that the trial court’s
exercise of jurisdiction over Morris does not offend traditional notions of
fair play and substantial justice.  




 

Conclusion

We conclude that Morris has sufficient minimum contacts with Texas to confer
specific jurisdiction in this case.  We
therefore hold that the trial court did not err in denying Morris’s special
appearance.  Accordingly, we affirm the
order of the trial court.

 

 

                                                                   Jane
Bland

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Bland and Huddle.

 











[1]See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West 2011)
(authorizing interlocutory appeal of order denying special appearance).





[2]U.S. Const. amend. XIV, § 1.





[3]See Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 2011).





[1] Trident contends that we should consider Morris’s
further contacts with Texas after Trident rejected the couplings, because
Morris stored and tested them for defects in Texas in an effort to cure the
alleged problems.  In opposition, Morris
claims these curative measures do not confer jurisdiction.  Attempting to fulfill its warranty
obligations under the contract, Morris sent corporate representatives to
Houston, stored couplings in Houston warehouses, and hired Houston companies to
test them for defects.  Trident sued
Morris, in part, for failing to meet warranty obligations under the
contract.  Morris’s contacts with Houston
after Trident claimed defective performance buttress the conclusion that Morris
partially performed the underlying contracts in Texas.  However, we need not rely on these particular
contacts to hold that Morris purposefully availed itself of Texas because
Morris paid Brebach to solicit Trident’s business and hired Texas companies to
transport its products.