**Reversed and Rendered and Memorandum Opinion filed May 11, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00412-CV

---

### JOE FORMICOLA, Appellant

### V.

### VIRTUAL INTEGRATED ANALYTICS SOLUTIONS, LLC, Appellee

---

**On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2022-15877**

---

### MEMORANDUM OPINION

In this interlocutory appeal from the denial of a special appearance, the question presented is whether the trial court has specific personal jurisdiction over a nonresident defendant. Our answer is "no." And because general personal jurisdiction has not otherwise been asserted, we reverse the trial court's order denying the special appearance and render the judgment that the trial court should have rendered, which is to dismiss all of the plaintiff's claims asserted against the nonresident defendant for want of personal jurisdiction. *See* Tex. Civ. Prac. & Rem.

Code § 51.104(a)(7) (interlocutory appeal); Tex. R. Civ. P. 120a (special appearance).

## BACKGROUND

The following discussion is based on the plaintiff's live pleading, which largely concerns allegations of misappropriated trade secrets.

The plaintiff, Virtual Integrated Analytics Solutions, LLC, is a Texas limited liability company, and it sells products and services to a variety of technological industries, including aerospace, telecommunications, and consumer electronics. One of Virtual's competitors is Optimal Designs Incorporated, a Texas corporation controlled by James Reed, a Texas resident.

Virtual offered to purchase Optimal and hire Reed as a new director. Reed accepted that offer, and he began working for Virtual before any purchase documents between Virtual and Optimal were formalized. Virtual anticipated that Reed would honor his agreement to formalize those documents, but each time the documents were presented to him, Reed requested new terms or qualifications.

Meanwhile, even without a final purchase of Optimal, Virtual began to share trade secrets with Reed. One trade secret concerned a profit-sharing agreement that Virtual had been negotiating with Himarc Simulations, a California corporation. To further that negotiation, Virtual tasked Reed with finalizing the procurement of certain accounts with Himarc. But instead of pursuing those accounts on behalf of Virtual, Reed sought other partnerships that included Optimal and excluded Virtual.

Reed first proposed a partnership with a prominent corporation in the industry, but that corporation rejected Reed's proposal. Reed then approached Joe Formicola, a Michigan resident, and CAELynx, LLC, the Michigan limited liability company that Formicola had founded. As Virtual alleged in its live pleading: "[Reed]

2

contacted Defendant Formicola . . . and offered to deliver the misappropriated Himarc partnership to Formicola and CAELynx. Formicola accepted the offer and engaged in a business partnership with Reed built on [Virtual's] confidential information and business relationship."

Virtual further alleged that CAELynx leveraged its new relationship with Himarc to obtain a lucrative merger with Computer Aided Technology, LLC ("CATI"), an Illinois corporation doing business in Texas. Formicola became a vice president of CATI. Reed also began working for CATI, after first resigning from Virtual and refusing to sell Optimal. CATI then began to poach several of Virtual's customer accounts, using confidential information misappropriated by Reed.

Virtual sued many parties. Against Formicola—who is the only defendant involved in this interlocutory appeal—Virtual alleged the following causes of action: violations of the Texas Uniform Trade Secrets Act, knowing participation in Reed's breach of fiduciary duty, tortious interference with existing and prospective business relations, common law unfair competition, and unjust enrichment.

Formicola filed a special appearance, in which he argued that Virtual had failed to plead sufficient facts to establish that the trial court could exercise either general personal jurisdiction or specific personal jurisdiction. Formicola also filed an affidavit, in which he averred that he is a Michigan resident, that he has only visited Texas four times in his life, and that his most recent visit occurred five years earlier (i.e., before the events alleged in this lawsuit).

Virtual filed a response, without any evidence attached. The response only addressed specific personal jurisdiction.

The trial court denied Formicola's special appearance without entering any findings of fact and conclusions of law. Formicola now challenges that ruling in this interlocutory appeal.

## ANALYSIS

Because there is no dispute that Formicola is a nonresident, the trial court could only assert personal jurisdiction over him if the Texas long-arm statute authorized the exercise of jurisdiction, and if such exercise was consistent with the federal and state constitutional guarantees of due process. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007).

The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident when the nonresident "does business in this state." *See* Tex. Civ. Prac. & Rem. Code § 17.042. The statute describes that phrase with three examples, but the examples are not exhaustive. *Id.* Instead, they are provided "in addition to other acts," and that broad language has been construed to mean that the statute will "reach as far as the federal constitutional requirements of due process will allow." *See Moki Mac*, 221 S.W.3d at 574–75. Consequently, in many cases, the analysis of whether a Texas court may assert personal jurisdiction over a nonresident collapses into the single inquiry of whether the exercise of jurisdiction comports with the limitations of federal due process. *Id.* at 575.

The exercise of personal jurisdiction is consistent with federal due process when the nonresident has established "minimum contacts" with the forum state, and when the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.*

A nonresident establishes minimum contacts with this state when his activities—regardless of where they occur—justify a conclusion that the nonresident

4

could reasonably anticipate being haled into a Texas court. *See M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 886 (Tex. 2017).

The extent of the nonresident's contacts can give rise to two types of personal jurisdiction. *See Moki Mac*, 221 S.W.3d at 575. The first type is general jurisdiction, which depends on the nonresident having made continuous and systematic contacts with this state. *Id.* The second type is specific jurisdiction, which is established when the nonresident's purposeful contacts with this state give rise to or relate to the nonresident's alleged liability. *Id.* at 575–76.

In a challenge to either type of personal jurisdiction, the plaintiff and the defendant bear shifting burdens of proof. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The plaintiff has the initial burden of alleging sufficient facts to permit the trial court's exercise of personal jurisdiction over the defendant. *Id.* If the plaintiff satisfies that burden, then the burden shifts to the defendant to negate every basis for jurisdiction alleged. *Id.* The defendant can satisfy that burden on a factual basis by presenting evidence that he has had no contacts with Texas, effectively disproving the plaintiff's allegations. *Id.* at 658–59. Alternatively, the defendant can show that even if the plaintiff's allegations are true, they are still legally insufficient to support the exercise of either general or specific jurisdiction. *Id.* at 659.

In his special appearance, Formicola did not attempt to negate the trial court's jurisdiction on a factual basis. For instance, he did not produce any evidence disproving Virtual's allegations that he had received misappropriated trade secrets from Reed. Instead, Formicola sought to negate the trial court's jurisdiction on a purely legal basis by arguing that Virtual's allegations, if true, were insufficient to establish both general personal jurisdiction and specific personal jurisdiction.

In its response, Virtual only addressed whether the trial court had specific personal jurisdiction over Formicola. Similarly, on appeal, Virtual has only defended the trial court's exercise of specific personal jurisdiction. We limit our analysis accordingly. And because the jurisdictional issue in this case presents a question of law, our review is de novo. *See Searcy v. Parex Resources, Inc.*, 496 S.W.3d 58, 66 (Tex. 2016).

To support the trial court's assertion of specific jurisdiction, the defendant's contacts with this state must show that the defendant purposefully availed himself of the privilege of conducting activities within Texas, and that a substantial connection exists between those activities and the operative facts of the litigation. *See M & F Worldwide Corp.*, 512 S.W.3d at 890. These are "co-equal components," which means that a trial court cannot exercise personal jurisdiction if either purposeful availment or a substantial connection is lacking. *See Moki Mac*, 221 S.W.3d at 579.

There are three parts to the purposeful-availment inquiry. First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. *Id.* at 575. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. *Id.* And third, the defendant must seek some benefit, advantage, or profit by availing himself of the jurisdiction. *Id.*

In addition to these rules, we must also consider the defendant's contacts on a claim-by-claim basis, unless all claims arise from the same contacts. *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150–51 (Tex. 2013).

Here, all of Virtual's claims against Formicola arise from a single alleged contact in Texas, which is that Formicola accepted an offer from Reed, a Texas resident, to engage in a business relationship that was built on trade secrets

misappropriated from Virtual, a Texas entity. Virtual did not allege that Formicola ever came to Texas to meet with Reed regarding this business relationship. Similarly, Virtual did not allege that Formicola agreed to operate this business in Texas, or that he ever solicited any business customers in Texas. Virtual did not even allege that Formicola had hatched the plan to misappropriate Virtual's trade secrets. Quite the opposite, Virtual alleged that Reed obtained the trade secrets from Virtual in Texas, and then Reed approached Formicola in Michigan with a plan for their misappropriation.

Reed's unilateral activity cannot be attributed to Formicola for jurisdictional purposes. The facts alleged in Virtual's live pleading, even if true, do not demonstrate that Formicola purposefully availed himself of the privilege of conducting activities in Texas. *Cf. Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 794 (Tex. 2005) (concluding that a Texas court had no jurisdiction over an Indiana retailer when the retailer's only contact with this state was the plaintiff's unilateral decision to place an order from Texas).

Virtual counters that Formicola is subject to this state's jurisdiction, even though he did not perform any particular act here, because after Formicola learned of the misappropriated trade secrets, he still knowingly elected to participate in Reed's scheme. But "a nonresident directing a tort at Texas from afar is insufficient to confer jurisdiction." *See Moncrief*, 414 S.W.3d at 157. Formicola's mere knowledge that a party in Texas would be affected by his decisions is also insufficient. *See Searcy*, 496 S.W.3d at 69 ("Even if a nonresident defendant *knows* that the effects of its actions will be felt by a resident plaintiff, that knowledge alone is insufficient to confer personal jurisdiction over the nonresident.").

Virtual also argues that four cases support the trial court's exercise of personal jurisdiction over Formicola.

The first case cited by Virtual is *Cornerstone Healthcare Group Holding, Inc. v. Nautic Management VI, L.P.*, 493 S.W.3d 65 (Tex. 2016). That case involved several nonresident defendants who created a Texas entity in order to purchase a chain of inpatient rehabilitation facilities in Texas. The Texas Supreme Court ruled that the nonresident defendants had purposefully availed themselves of conducting business in Texas because they "specifically sought both a Texas seller and Texas assets." *Id.* at 73. Virtual contends that the facts of *Cornerstone* are materially indistinguishable from the allegations in this case, but Virtual did not allege that Formicola sought Texas assets. Instead, Virtual alleged that Reed initiated contact with Formicola and proposed a business relationship built on misappropriated trade secrets from Texas. We cannot agree that *Cornerstone* controls.

The second case cited by Virtual is *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333 (Tex. 2009). The nonresident defendant in that case argued that it was not subject to personal jurisdiction, even though it had been assigned certain real property assets in Texas that were related to the litigation. The Texas Supreme Court rejected that argument and held that the nonresident defendant was subject to personal jurisdiction because the nonresident defendant had created a "continuing relationship" with Texas. *Id.* at 399. Virtual suggests that *Retamco* is analogous because Formicola's relationship with Texas is ongoing, rather than fleeting or isolated. But Virtual did not allege any ongoing contacts between Formicola and Texas, and the real property assets in *Retamco* are qualitatively different from the trade secrets involved here, which are just business customers. *Id.* ("This ownership [of real property] also allows Republic to 'enjoy . . . the benefits and protection of Texas laws.' Unlike personal property, Republic's real property will always be in Texas, which leaves no doubt of the continuing relationship that this ownership creates."). One of the customers, Himarc, was a California

corporation. And there were no allegations that the remaining customers poached by CATI, Formicola, and Reed were Texas entities.

The third case cited by Virtual is *Nogle & Black Aviation, Inc. v. Faveretto*, 290 S.W.3d 277 (Tex. App.—Houston [14th Dist.] 2009, no pet.). One of the nonresident defendants in that case was a business entity that had contracted with a Texas resident to perform engineering work in Texas. This court concluded that the nonresident defendant had made a purposeful contact with Texas because the nonresident defendant specifically chose to form a business relationship with the Texas resident among other possible candidates, and because the nonresident defendant had also used the Texas resident's work in the broader marketplace. *Id.* at 283. Virtual seems to suggest that *Nogle & Black Aviation* is analogous because Formicola also chose to form a business relationship with a Texas resident. However, the similarity ends there. In *Nogle & Black Aviation*, this court emphasized that there was purposeful availment because the nonresident defendant's contact with Texas "was not unilaterally initiated by the Texas resident." *Id.* This case presents the exact opposite situation. According to Virtual's own pleadings, Formicola did not unilaterally initiate contact with Reed, a Texas resident. Instead, Reed initiated contact with Formicola, after Reed had already misappropriated Virtual's trade secrets.

The fourth and final case cited by Virtual is *TravelJungle v. American Airlines, Inc.*, 212 S.W.3d 841 (Tex. App.—Fort Worth 2006, no pet.). The nonresident defendant in that case "screen-scraped" network servers located in Texas, which had the effect of diminishing the plaintiff's computer capacity. The court of appeals held that the nonresident defendant was subject to personal jurisdiction in Texas because the evidence showed that the nonresident defendant purposefully directed its data-gathering activities towards network servers in Texas

9

for commercial, profit-driven reasons. *Id.* at 850. Virtual argues that *TravelJungle* provides "pertinent guidance" in this case, but Virtual never explains how the two cases are even similar. In our view, *TravelJungle* has no apparent application to this case because Formicola did not "screen-scrape" Virtual's servers or otherwise collect trade secrets from Virtual. Instead, Reed collected trade secrets from Virtual and then shared them with Formicola.

Based on the foregoing, we conclude that the trial court erred by denying Formicola's special appearance because the facts alleged by Virtual are legally insufficient to show that Formicola purposefully availed himself of the privilege of conducting activities in Texas. In light of that conclusion, there is no need to consider whether Formicola's contacts with Texas have a substantial connection with the litigation, because in either event, the trial court could not exercise specific personal jurisdiction over Formicola, a nonresident. *See* Tex. R. App. P. 47.1.

## CONCLUSION

The trial court's order denying the special appearance is reversed and judgment is rendered dismissing all of Virtual's claims against Formicola for want of personal jurisdiction.

/s/     Tracy Christopher
        Chief Justice

Panel consists of Chief Justice Christopher and Justices Jewell and Spain.